DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

**KEOSHA CARN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-1941

[April 1, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Howard K. Coates, Jr., Judge; L.T. Case No. 502021CF010250BXXX.

Antony P. Ryan, Regional Counsel, and Louis G. Carres, Assistant Regional Conflict Counsel of Office of Criminal Conflict and Civil Regional Counsel, Fourth District, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Anesha Worthy, Senior Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

The defendant appeals her convictions for first-degree murder, attempted first-degree murder, and attempted second-degree murder. She argues the trial court erred in: (1) denying her motion to suppress the seizure and search of her cell phone; (2) denying her full cross-examination of a witness at trial; (3) denying her motion to preclude a trial on a degree of homicide rejected by a prior jury in the trial of a co-defendant; and (4) failing to recognize the doctrine of transferred intent does not apply to attempted second-degree murder. We agree with her on issue two and reverse. We affirm on the remaining issues without further discussion.

- *The Facts*

The charges arose from a heated verbal confrontation between the then-pregnant defendant, her aunt, and an acquaintance. Each party claimed the other was the aggressor. The State argued the defendant was the

aggressor. The defendant claimed she was threatened with the forced miscarriage of her unborn child and acted only in defense.

During the altercation, the defendant phoned her co-defendant boyfriend to seek assistance and protection. The co-defendant later arrived and discharged a firearm, fatally striking a teenage bystander who was unconnected to the confrontation.

It all started when the co-defendant boyfriend dropped the defendant off at a client's apartment to braid her hair. At the time, the defendant was four months pregnant and had her two-year-old child with her. The defendant's aunt and the aunt's sister gathered outside the apartment and began hurling insults and making threats of violence towards the defendant, urging her to come outside and fight them. This continued over the course of several hours. While outside, the aunt wore blue gloves that she admitted she wore during physical confrontations to prevent blood from getting on her.

Phone records corroborated the defendant's testimony that she made repeated calls to family, friends, and her co-defendant boyfriend seeking assistance with, or removal from, the situation. When she attempted to leave at one point, the situation escalated, and she remained inside.

At trial, the State's theory was that the defendant summoned her co-defendant boyfriend to carry out a shooting. The defense responded that the defendant's calls were motivated by fear and an effort to protect herself, her toddler, and her unborn child from an ongoing and escalating threat.

The aunt and her sister were key State witnesses. During cross-examination, defense counsel sought to question the aunt about specific statements she directed at the defendant during the confrontation, including insults to lure the defendant outside and threats of physical harm to cause the defendant to miscarry. The State objected on hearsay grounds; the trial court sustained the hearsay objections. Defense counsel made a proffer. The trial court excluded the entire line of questions as hearsay.

- ***The Analysis***

In her second issue, the defendant argues the trial court erred in sustaining the State's hearsay objections and limiting her cross-examination of a key State witness regarding the verbal threats against her, her unborn child, and her other minor child. The State responds that the issue is unpreserved and is harmless.

2

"Admissibility of evidence is within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appellate review unless there is an abuse of discretion." *Joseph v. State*, 336 So. 3d 218, 234 (Fla. 2022) (quoting *Tundidor v. State*, 221 So. 3d 587, 598 (Fla. 2017)) (citation modified). "However, the question of whether a statement is hearsay is a matter of law and is subject to de novo review on appeal." *Id.*

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. § 90.801(1)(c), Fla. Stat. (2023). Statements offered for another purpose—such as to show their effect on the listener, to explain subsequent conduct, or to establish state of mind—are not hearsay and are admissible if otherwise relevant. *See Smith v. State*, 415 So. 3d 278, 291 (Fla. 6th DCA 2025) ("A recognized, non-hearsay use of an out-of-court statement is to show the 'effect on the listener.'" (quoting *Blackwood v. State,* 777 So. 2d 399, 407 (Fla. 2000)).

Here, defense counsel did not seek to introduce the aunt's statements to prove that the insults or threats were true. Rather, the questions were designed to show what the defendant heard and why the defendant repeatedly called for help. The statements were therefore offered for their effect on the defendant listener and to provide context for the defendant's state of mind during the confrontation.

Florida courts have repeatedly recognized that statements offered to explain a defendant's conduct are admissible as non-hearsay. *See Smith*, 415 So. 3d at 292 ("[A] prior threat made to a defendant before the defendant used force is not hearsay when offered to show that the defendant feared that he or she was in danger of death or great bodily harm." (citation modified)); *Jenkins v. State*, 189 So. 3d 866, 869 (Fla. 4th DCA 2015) ("When a statement is offered to prove what a person thought after the person heard the statement, it is being offered to prove the person's state of mind and is not hearsay.").

Excluding such testimony on hearsay grounds was legal error.[1]

Nevertheless, the State argues the defendant failed to preserve this issue because defense counsel did not make an adequate proffer. We disagree.

---

[1] Because we conclude that the trial court's ruling constituted evidentiary error, we do not reach the defendant's alternative argument that the ruling violated her constitutional right to confrontation.

Defense counsel advised the court of the specific statements to be elicited from the aunt. These included the threat that she would cause the defendant to miscarry and threats and insults about the defendant's toddler that were intended to provoke a fight. The trial court sustained the hearsay objections categorically, ruling that all such testimony was hearsay, irrelevant, and a more detailed proffer was unnecessary.

Where evidence is excluded as a class and the court suggests any further proffer as unavailing, the issue has been preserved. *See Seeba v. Bowden*, 86 So. 2d 432, 434 (Fla. 1956) ("[A] proffer is unnecessary where the offer would be a useless ceremony, or the evidence is rejected as a class, or where the court indicates such offer would be unavailing...." (citation modified)).

Here, the substance of the excluded testimony was clear from the questions asked and the proffer made. We are not left to "speculate about the admissibility" of the witness's answers to the questions. *See Lucas v. State*, 568 So. 2d 18, 22 (Fla. 1990) (citing *Salamy v. State*, 509 So. 2d 1201 (Fla. 1st DCA 1987); *Phillips v. State*, 351 So. 2d 738 (Fla. 3d DCA 1977), *cert. denied*, 361 So. 2d 834 (Fla. 1978)). The answers would have been admissible regardless of whether the witness answered "yes" or "no" to whether she made the threatening statements, and the jury would have had an opportunity to assess her credibility in her answers.

And the error was NOT harmless. Under the harmless error standard, the State bears the burden of proving beyond a reasonable doubt that the error did not contribute to the verdict. *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Contrary to the dissent's position, the State has not met that burden here.

The excluded testimony went directly to the defendant's central defense—that she acted out of fear in response to escalating threats, including threats to her toddler, her unborn child, and herself. The case largely turned on her intent in eliciting her co-defendant boyfriend's help.

Although the dissent suggests the defendant did not assert a formal claim of self-defense, the excluded evidence bore directly on her explanation for making the calls the State relied upon as proof of intent. The statements were offered not to justify the use of force, but to provide context for why the defendant sought assistance and to allow the jury to evaluate her explanation for the calls.

While not a classic self-defense case, the defendant clearly argued that she was in fear for her life and that of her toddler and unborn child. For

4

that reason, she made several calls asking for help, asking to be defended from the threats made by her aunt and her aunt's sister. These facts are not so divorced from a self-defense case as to render the defendant's intent meaningless.

The dissent also suggests that the aunt's credibility was not at issue or made an issue by the defendant. Here, the statements by the aunt and her friend were offered to establish the defendant's state of mind in requesting assistance in her phone calls. Was the assistance requested to murder someone, or was the assistance requested to defend the defendant from the threats and potential violence contained within them? Surely, the aunt's credibility was in question. But the real issue here was to show the defendant's reason for soliciting help in getting out of the situation.

By preventing the jury from hearing testimony that the aunt threatened the defendant with physical harm and miscarriage, the defense was deprived of presenting the critical context supporting the defendant's explanation of her conduct to the jury. Given the sharply conflicting accounts of the confrontation and the importance of the jury's assessment of witness credibility, we cannot say there is no reasonable possibility that the exclusion of the evidence affected the verdict.

"The unforgiving standard for harmless error in criminal appeals was designed to protect the rights of the criminal defendant." Judge Robert M. Gross and David R. Maass, *Harmless Error in Civil Appeals*, 89 Fla. Bar J. 10, 18 (2015). Because the trial court erroneously excluded non-hearsay testimony as hearsay and was testimony central to the defendant's defense, we reverse the defendant's convictions and sentences and remand the case for a new trial. Put simply, the State failed to bear its burden of proof that there was no reasonable possibility the exclusion of this evidence contributed to the jury's findings.[2]

*Affirmed in part; Reversed in part and remanded for a new trial.*

MAY and CIKLIN, JJ., concur.

LOTT, J., dissents with opinion.

LOTT, J., dissenting.

---

[2] We affirm on the remaining issues without discussion.

I respectfully dissent. Any error was harmless, and I would affirm.[3]

The panel holds that the exclusion of the hearsay evidence was harmful because the case turned on credibility and intent. But there is no "reasonable possibility" that the exclusion contributed to the jury's findings on either credibility or intent. *See State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.").

As to intent—this was not a self-defense case. The defendant did not raise self-defense or argue that she was justified in soliciting her boyfriend to commit murder. Rather, the parties argued at trial about what she had said to her boyfriend. The state's witnesses claimed the defendant had explicitly asked her boyfriend to come "shoot… up" the place and made explicitly violently threats.[4] The defendant testified that she did not request violence and merely asked for (non-violent) assistance escaping the situation.

In her briefing on appeal, the defendant argues that even if she had made the "shoot… up" statements to her boyfriend,

---

[3] I agree with the majority that the trial court erred in sustaining the hearsay objection inasmuch as the proffered statements concerning the aunt's threats to the defendant were being offered for the effect on the listener rather than the truth of the matter asserted, and that the argument was preserved.

But in addition to sustaining the hearsay objection, the trial court also appeared to sustain the objections on grounds of relevance and Section 90.403, Florida Statutes (although the transcript is not crystal clear). The state does not clearly argue that the objections should have been sustained alternatively on those grounds, so I will not address that point, but—for the same reasons underlying the harmless error analysis I address in this dissent—there's probably a good argument that the trial court did not err at all when it sustained the objections on those alternative grounds.

[4] Rogena Clark testified that she heard the defendant tell her boyfriend to "shoot that shit up."

Shalontay Ashe testified that she heard the defendant tell her boyfriend "Get here now, I want this bitch dead now."

Latesha Lyman testified she heard the defendant yell "I want these hoes dead."

6

she was so threatened and fearful that she sought help from [her boyfriend] to come shoot it up under pressure of desperation and fear and not from a premeditated intent to kill. The evidence would help support a defense that her words were the reaction of a frightened victim rather than an actual call for a premeditated murder.

In other words, the defendant argues that even if she had explicitly asked her boyfriend (who, in fact, showed up armed and fired a gun) to come kill them, she didn't *really mean* for him to come kill them, and that the excluded threats would have allowed the jury to find that she didn't *really mean it*. That argument is as weak as it sounds.

There's no reasonable possibility that the aunt's excluded testimony could have contributed to the jury's finding on the defendant's state of mind in soliciting her boyfriend to come "shoot that shit up" and make "this bitch dead now." If the defendant made those statements, her murderous state of mind is not reasonably in dispute. There's nothing to provide "critical context" for.

As to credibility—the aunt's excluded testimony was never offered to show any witness's credibility. Her testimony was offered to show effect on the listener, as the majority holds. That concerns the defendant's state of mind, not anyone's credibility. Allowing the statements for the purpose of showing either the defendant's or the aunt's "credibility"—their propensity to tell the truth at trial—was never argued below, not meaningfully preserved in the briefing on appeal, and, in any event, is entirely improper under sections 90.404, 90.608, and 90.609, Florida Statutes (2023).

In sum, there's no reasonable possibility the exclusion contributed to the jury's finding on whether the defendant explicitly solicited the "shoot… up" or whether she did not. And there's no reasonable possibility that the exclusion could have caused the jury to believe that, if the defendant made the "shoot… up" solicitation, her state of mind was anything other than an intent to kill.

Any error was harmless. I would affirm the defendant's convictions for murder.

\* \* \*

*Not final until disposition of timely-filed motion for rehearing.*